IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ABNER M. AUST,
      Petitioner,

vs.                                   Case No. 4:06cv430/RH/EMT

WALTER A. McNEIL,[1]
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer to the petition and relevant portions of the state court record (Doc. 7).  Although Petitioner was provided an opportunity to file a reply (*see* Docs. 9, 12, 14), he declined to do so.

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 7, Exhibits).  Following a jury trial in the Circuit Court in and for Wakulla County, Florida, Petitioner was convicted of solicitation to commit first degree murder (*see* Doc. 7, Ex. A at 27, Ex. B at 216–17).  On April 17, 2003, Petitioner was adjudicated guilty and

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

sentenced to seventy-two (72) months of imprisonment with jail credit of 390 days (*id.* at 43–45). Petitioner appealed the judgment to the Florida First District Court of Appeal (First DCA) (Doc. 7, Exs. C, D). The First DCA affirmed the judgment per curiam without written opinion on May 12, 2004, with the mandate issuing May 28, 2004 (*id.*, Exs. F, G). Aust v. State, 873 So. 2d 1226 (Fla. 1st DCA May 12, 2004) (Table).

On July 12, 2004, Petitioner filed a petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel (Doc. 7, Ex. I). The First DCA denied the petition on the merits on September 21, 2004 (*id.*, Ex. J). Aust v. State, 884 So. 2d 980 (Fla. 1st DCA Sept. 21, 2004).

On May 16, 2005, Petitioner field a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 7, Ex. K at 3–24). The trial court summarily denied relief on October 3, 2005 (*id.* at 47–48). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on May 24, 2006, with the mandate issuing June 20, 2006 (Doc. 7, Exs. N, O). Aust v. State, 930 So. 2d 623 (Fla. 1st DCA May 24, 2006).

Petitioner filed the instant habeas action on August 29, 2006 (Doc. 1 at 16). Respondent concedes that the petition is timely (Doc. 7 at 4–5).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S.

---

[2]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

      Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

      If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground one:  Ineffective assistance violating defendant's 5th, 6th, and 14th Amendment constitutional rights by failing to object to inadmissibility of prior conviction used by State under similar facts evidence rule.

Petitioner states that the State filed a notice of intent to introduce similar fact evidence, and although defense counsel objected to this "Williams Rule" evidence, counsel asserted the wrong grounds as the basis for the objection (Doc. 1 at 5; Doc. 3 at 7–8).  Petitioner states the similar fact evidence was his prior conviction for solicitation to commit arson of an occupied structure or dwelling (id.).  He states the prior conviction was pursuant to his plea of nolo contendere, and under Florida law, evidence of a conviction based upon a plea of nolo contendere is inadmissible; therefore, counsel should have objected to admission of the evidence on this ground (id.).

1.    Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Id. at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

Moreover, "[c]ounsel will not be deemed unconstitutionally deficient because of tactical decisions."  McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984) (citations omitted); Crawford v. Head, 311 F.3d 1288, 1312 (11th Cir. 2002) ("Deliberate choices of trial strategy and tactics are within the province of trial counsel after consultation with his client.  In this regard, this court will not substitute its judgment for that of trial counsel.") (quotation marks, internal alteration, and citation omitted).  There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy.  Rogers, 13 F.3d at 386; *see also* Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004).  "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference.  Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)).  "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel."  Waters, 46 F.3d at 1514.  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and

because allegations of what a witness would have testified are largely speculative." <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).[3]

 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Doc. 7, Ex. K at 6–7). The state court determined that Petitioner was essentially challenging the trial court's decision to allow admission of the "<u>Williams</u> Rule" evidence, which was a matter that Petitioner should have raised on direct appeal pursuant to state law, and that Petitioner was couching his claim in terms of ineffective assistance of counsel in an attempt to use the postconviction proceeding as a second appeal (*id.* at 47–48). Therefore, the court denied the claim (*id.*).

The state court did not adjudicate the merits of Petitioner's claim; therefore, the undersigned will review the claim de novo. To assess whether counsel's performance was deficient, the court must determine whether defense counsel had a meritorious basis for making the argument that Petitioner faults him for not making, that is, whether evidence of Petitioner's prior conviction of solicitation to commit arson involving his ex-wife's home was inadmissible. In <u>Zack v. State</u>, 753 So. 2d 9 (Fla. 2000), the Florida Supreme Court extensively addressed the standard for admitting evidence as follows:

> In <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959), this Court reiterated the standard rule for admission of evidence; that is, that any evidence relevant to prove a material fact at issue is admissible unless precluded by a specific rule of exclusion. *See* § 90.402, Fla. Stat. (1995). The Court also said relevant evidence will not be excluded merely because it relates to facts that point to the commission of a separate crime, but added the caveat that "the question of the relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible." 110 So. 2d at 662. This rule concerning the admissibility of similar fact evidence has been codified by the Legislature as section 90.404(2), Florida Statutes (1995).
>
> Later, in <u>Bryan v. State</u>, 533 So. 2d 744 (Fla. 1988), we made it clear that the admissibility of other crimes evidence is not limited to crimes with similar facts. We stated that similar fact evidence may be admissible pursuant to section 90.404, and other crimes or bad acts that are not similar may be admissible under section 90.402.

---

[3]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

We reiterated the distinction between "similar fact" evidence and "dissimilar fact" evidence in <u>Sexton v. State</u>, 697 So. 2d 833, 837 (Fla. 1997).

Thus, section 90.404 is a special limitation governing the admissibility of similar fact evidence. But if evidence of a defendant's collateral bad acts bears no logical resemblance to the crime for which the defendant is being tried, then section 90.404(2)(a) does not apply and the general rule in section 90.402 controls. A trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion. <u>Heath v. State</u>, 648 So. 2d 660, 664 (Fla. 1994).

Thus, whether the evidence of other bad acts complained of by Zack is termed "similar fact" evidence or "dissimilar fact" evidence, its admissibility is determined by its relevancy. The trial court must utilize a balancing test to determine if the probative value of this relevant evidence is outweighed by its prejudicial effect. *See* § 90.403, Fla. Stat. (1995); <u>Gore v. State</u>, 719 So. 2d 1197 (Fla. 1998).

*Id.* at 16.

According to the amended charging document filed in Petitioner's instant case, Petitioner was accused of soliciting James Glawson to commit first degree murder by engaging in discussions with him, from February 1, 2002 through April 1, 2002, about killing Brenda Aust, and during those discussions Petitioner encouraged, hired, or requested Glawson to kill Brenda Aust by burning or drugging her or both (Doc. 7, Ex. A at 20). Nearly six months prior to Petitioner's trial, the State filed a Notice of Intent to Introduce Similar Fact Evidence notifying defense counsel that the State intended to introduce similar fact evidence of other crimes, wrong or acts committed by Petitioner, and this evidence would show the following:

The defendant solicited an individual to kill the same victim prior to the allegations set forth in the above-captioned case. In fact the defendant was incarcerated in the Department of Corrections for facts arising out of soliciting to murder his ex-wife. The defendant was motivated by a financial dispute over monetary and/or property transactions ultimately alleged to have been favorable to the defendant's former wife and unfavorable to the defendant. While incarcerated the defendant again solicited the services of an individual to murder his ex-wife.

(Doc. 7, Ex. A at 18). During trial, defense counsel objected to the admission of any "<u>Williams Rule</u>" evidence but did not argue any specific grounds for the objection:

THE COURT: It's my understanding that it is being requested that if the State presents Williams rule evidence at the — you have a request for the Williams rule instruction, 3.08, Mr. Glazer?

MR. GLAZER [defense counsel]:  That's correct.  And, again, the defense objects to any Williams rule evidence.

THE COURT:  All right.  Then we will give your instruction.

(Doc. 7, Ex. B at 91).  The State called Deputy Sheriff Keith Sumner as a witness.  Prior to direct examination, the court gave the following instruction:

> At this time, members of the Jury, the evidence you are about to receive concerning evidence of other crimes allegedly committed by the defendant will be considered by you for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, the absence of mistake or accident on the part of the defendant and you shall consider it only as it relates to those issues.  However, the defendant is not on trial for a crime that is not included in the information.

(*id.* at 98).  Deputy Sumner then testified that he was previously involved in a case in which he received information that Petitioner was attempting to hire an individual to commit arson on Brenda Aust's home and to murder her during the arson (*id.* at 98–99).  Deputy Sumner testified that he arranged meetings between the individuals involved, including an informant, and monitored the electronic listening devices that were used during those meetings (*id.* at 99).  He testified that during the monitored conversations, the individuals discussed that it did not matter if Brenda Aust was in the house when it burned down (*id.*).  Deputy Sumner testified that Petitioner "paid" one dump truck, one mower, and several tires in exchange for burning Ms. Aust's house down, and Petitioner gave both the title to the truck and physical possession of the truck to the other individual in furtherance of the transaction (*id.* at 99–100).  Deputy Sumner testified that Petitioner was arrested, prosecuted, and convicted for solicitation to commit arson (*id.* at 100–01).

In Bradley v. State, the Florida Supreme Court analyzed a Williams rule claim under similar facts.  787 So. 2d 732, 734 (Fla. 2001).  In Bradley, the defendant was convicted of murder, burglary, and conspiracy, all arising out of the murder of Jack Jones, which was committed at the request of the victim's wife, Linda Jones.  *Id.*  Testimony at trial indicated that Mrs. Jones became distraught and incensed when she learned that Mr. Jones had a sexual affair with Carrie Davis, a teenage girl the Joneses had befriended and taken into their home.  *Id.* at 734.  When unsuccessful in her numerous attempts to break up the affair, and upon learning of Mr. Jones's intent to marry the girl, Mrs. Jones sought Bradley's assistance, first to physically intimidate the teenage girl and later

to assault and batter Mr. Jones.  *Id.*  At trial, the State was permitted to introduce evidence that on the night of October 31, 1995, one week before Mr. Jones was killed, Bradley, the McWhite brothers and Clark vandalized the car of Mr. Jones's teenage girlfriend.  *Id.* at 741.  The McWhite brothers, Clark, and the girl testified about the incident, in which Bradley, the McWhites, and Clark drove to her apartment to intimidate her and to retrieve the ring Mr. Jones had given her.  Since Mr. Jones was at the apartment, the men waited for his departure.  *Id.* at 742.  When Mr. Jones left, the four men knocked on the door, but the girl refused to answer it.  *Id.*  The McWhite brothers then broke her vehicle's windows, as directed by Bradley.  *Id.*  For a good part of this episode, according to the testimony, Bradley was in constant communication with Mrs. Jones through his cellular phone.  *Id.* On appeal, Bradley argued that evidence of the October 31 incident was improperly admitted as Williams rule evidence because the sole purpose of the evidence was to show his bad character and propensity to commit crimes.  The Florida Supreme court disagreed.  The State was attempting to establish Bradley's intent and premeditation, which was a material point at trial, and in order to prove the premeditation element, the State had to establish the chain of events which tended to show Mrs. Jones's initial procurement of Bradley to break up her husband's romantic relationship and her subsequent conspiracy with Bradley to kill Mr. Jones.  *Id.*  Therefore, the state supreme court held that the evidence was properly admitted.  *Id.* at 742.

    The crime with which Petitioner was charged in the instant case, criminal solicitation, is statutorily defined as "[a] person who solicits another to commit an offense prohibited by law and in the course of such solicitation commands, encourages, hires, or requests another person to engage in specific conduct which would constitute such offense or an attempt to commit such offense. . . ."  Fla. Stat. § 777.04(2).  The elements of criminal solicitation are (1) commanding, hiring, requesting, or encouraging another person to commit a crime, and (2) the intent that the other person commit the crime.  The Florida Bar v. Marable, 645 So. 2d 438, 442 (Fla. 1994); Jones v. State, 908 So. 2d 615, 619 (Fla. 4th DCA 2005); Jenerette v. State, 898 So. 2d 1144, 1146 (Fla. 5th DCA 2005); State v. Waskin, 481 So. 2d 492 (Fla. 3d DCA 1985); State v. Milbro, 586 So. 2d 1303, 1304 (Fla. 2d DCA 1991) (citing State v. Gaines, 431 So. 2d 736, 737 (Fla. 4th DCA 1983)).  The State presented the Williams rule evidence in an attempt to establish Petitioner's intent that Mr. Glawson kill Brenda Aust.  Evidence that Petitioner previously attempted to procure someone to commit

violence against the same victim tended to show that Petitioner intended to hire someone to kill her. Therefore, the evidence was relevant and probative on the issue of intent.  Furthermore, the evidence was relevant to Petitioner's defense that he was entrapped by Glawson, who was working as an agent for law enforcement; if Petitioner proved by the greater weight of the evidence that Glawson induced or encouraged him to commit the crime charged, the State was required to prove that Petitioner was predisposed to commit the crime prior to and independent of Glawson's alleged inducement or encouragement.  Moreover, the trial court properly instructed the jury, both before Deputy Sumner testified and during the charge to the jury, that the evidence of Petitioner's prior solicitation of arson of Brenda Aust's home could be considered only for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident on the part of Petitioner (*see* Doc. 7, Ex. B at 98, 205–06).  Therefore, the evidence was admissible under the Florida Evidence Code.

Finally, Petitioner's argument that evidence of the prior conviction was inadmissible because the conviction was pursuant to his plea of nolo contendere is without merit for two reasons.  First, Petitioner apparently relies on section 90.410 of the Florida Evidence Code, which provides that evidence of a plea of nolo contendere is inadmissible in any civil or criminal proceeding.  Fla. Stat. § 90.410.  However, this section precludes evidence of a <u>plea</u> of nolo contendere, not a prior conviction entered on that plea.  *See* <u>State v. Raydo</u>, 713 So. 2d 996, 1001 (Fla. 1998) (pursuant to section 90.410, defendant's nolo contendere plea, without a conviction entered on that plea, is not admissible to attack a defendant's credibility).  Second, Fla. Stat. § 90.404(2) specifically states that "Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue . . . ."  Thus, Petitioner need not have been charged with or convicted of an offense relating to the earlier solicitation to harm Brenda Aust for the evidence of his underlying conduct to be admissible (that is, Petitioner's conduct as described by Deputy Sumner), because the statute permits the introduction of evidence of other "wrongs" or "acts" in addition to evidence of other "crimes."  The fact that Petitioner's prior conviction was based on a plea of nolo contendere, therefore, is irrelevant.  And, because Petitioner did not have a meritorious basis for arguing that the evidence was not admissible under the <u>Williams</u> rule, he cannot prevail on his claim that counsel was ineffective for not challenging admission of the similar fact evidence on that ground.  *See*

<u>Thomas v. Newsome</u>, 821 F.2d 1550, 1555 (11th Cir. 1987) (petitioner could not meet <u>Strickland</u> standard if counsel did not have meritorious basis for making argument that petitioner faulted him for not making).

       B.    <u>Ground two:  Ineffective assistance violating defendant's 5th, 6th, and 14th Amendment constitutional rights by failing to object to misrepresentation of facts by State's attorney.</u>

       Petitioner next claims that defense counsel should have objected to the prosecutor's misrepresentation of Petitioner's prior conviction as an attempt to have his ex-wife murdered, since the conviction was for solicitation of arson not murder (Doc. 1 at 6; Doc. 3 at 9).  Petitioner contends defense counsel should have objected to the prosecutor's statements and requested a curative instruction, or moved for a mistrial, or both (Doc. 3 at 9).

       1.    Clearly Established Supreme Court Law

       The Supreme Court standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

       2.    Federal Review of State Court Decision

       Petitioner raised this claim as Ground Two in his Rule 3.850 motion (*see* Doc. 7, Ex. K at 8–9).  The state court disposed of the claim in the same manner as Ground One.  Because the state court did not adjudicate the merits of Petitioner's ineffective assistance of counsel claim, the undersigned will review the claim de novo.

       As with Petitioner's previous claim, to assess whether defense counsel performed unreasonably by failing to object to statements by the prosecutor or move for a mistrial, the court must determine whether counsel had a meritorious basis for doing so.  Under Florida law, the standard for reviewing prosecutorial comments is the following:

       Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.  The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.  A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done."  Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted).  This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.  A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted).  But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper.  *Id.* at 1507.  Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence.  *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).  "[T]he limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law."  Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper, and (2) the comments must have rendered the trial fundamentally unfair.  *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987).  If a reviewing court is confident that, absent the improper remarks, there is no reasonable probability that the outcome of the trial would have been different, the trial cannot be said to have been fundamentally unfair.  *See* Brooks, 762 F.2d at 1402; Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986).

In applying this standard, a reviewing court should not assess prosecutorial comments in isolation, "shorn of their context"; rather, the court must examine the entire context of the trial proceeding.  Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997) (citing Brooks, 762 F.2d at 1413).  "In this regard, isolated or ambiguous or unintentional remarks must be viewed with lenity." *Id.* (internal quotation and citation omitted).  Furthermore, the court should evaluate whether "defense counsel's closing argument . . . ameliorate[d] the damage done to the defense by the

prosecutor's [statements]." *Id.* (citations omitted).  Moreover, the court must consider the trial court's instructions to the jury, as they "may remedy effects of improper comments." *Id.* (internal quotation and citation omitted).  Finally, the court must consider the evidence of guilt, as "[a] court need not determine whether specific arguments are proper or improper if, taken as a whole, they would not require relief."  *Id.* (internal quotation and citation omitted).

 The first comment characterized by Petitioner as improper is the following statement by the prosecutor during opening statements:

>  In the early part of last year of [sic] the defendant, Abner Aust, set in motion what he thought would result in the quiet death of his former wife Brenda Aust and in by [sic] doing that he would succeed in what he failed to do years earlier, having her murdered.
>
>  I anticipate that you will hear that Abner Aust was incarcerated in the Wakulla — Wakulla Correctional Institution for hiring someone to burn his former wife's house down with her in it.  And fortunately for her, and unbeknownst to him, he hired undercover law enforcement to carry out that plan.
> . . . .
> . . . he subsequently was prosecuted and sent to prison and ends up the [sic] Wakulla Correctional Institution and while his is there he befriends a younger inmate by the name of James Glawson and they get to talking and they discussed how each of them ended up in prison.  And then as time goes by Abner Aust develops a trust in this inmate James Glawson and he begins talking with him about how he wants to have his former wife murdered.

(Doc. 7, Ex. B at 6–7).  This was an accurate characterization of Deputy Sumner's subsequent testimony. As previously noted, Deputy Sumner testified that he was previously involved in a case in which he received information that Petitioner was attempting to hire an individual to commit arson on Brenda Aust's house and to murder her during the arson (*id.* at 98–99).  Deputy Sumner testified that Petitioner was arrested, prosecuted, and convicted for solicitation to commit arson (*id.* at 100–01).  The prosecutor's comment that Petitioner was incarcerated for hiring someone to burn his former wife's house down with her in it was an accurate description of Deputy Sumner's anticipated testimony; therefore, defense counsel had no basis for objecting to the comment.

 The next comments characterized by Petitioner as improper were made during closing arguments.  Defense counsel argued first and last.  During his first argument, defense counsel argued an entrapment defense and stated the following:

Remember in the beginning we talked in jury selection that the burden of proof is on the prosecutor and we don't have to prove anything, but because we have raised the entrapment defense we do have to prove something to you now, by a greater weight of the evidence that there was some entrapment. Now, the burden shifts from our table over to the prosecutor.

What does the prosecutor have to prove to you now? Well, if my client proves by the greater weight of the evidence, now it's up to — the prosecutor must prove beyond a reasonable doubt that Mr. Aust was predisposed to commit the crime charged. All right. So if you feel that we have proved by the greater weight of the evidence that there was some entrapment, now beyond a reasonable doubt, . . .Mr. Flury has to prove that he was predisposed, that Mr. Aust was predisposed. And you know how he is going to say it? He is going to say Mr. Aust was predisposed to commit this crime because he is in prison for committing a similar crime. He is going to say because he was in prison for solicitation to commit arson, not murder, you heard what they said. He was in jail for solicitation to commit arson. So, therefore, the prosecutor is going to argue he is predisposed to commit the crime. That takes us back to Polk County.

And the judge will read you the Williams rule instruction. Now, the evidence from Polk County was given to you so you can determine whether or not it goes with the—he is not being tried for what happened in Polk County. Okay. That's not what he is on trial here for, but the prosecutor is bringing it up because he has to—he is trying to show you that — I'm going to read the Williams rule. It's so much more easier rather than mislead you.

The Williams rule says he is using this evidence to show intent, motive, opportunity to commit the crime. Okay. That's what the Williams rule is, but please do—remember and the judge will caution you, we are not using the Polk County crime to say, well, if he was guilty then he is guilty now. That's not what it is about, but the prosecutor is going to argue that that's the predisposition. He was predisposed to commit a crime against Brenda Aust.

(*id.* at 184–86).

The prosecutor responded with the following argument (the undersigned has emphasized the comments characterized by Petitioner as improper):

What I want to do is I want to recall some of the taped testimony that you heard and I'm just going to take Mr. Aust's words straight out of his mouth and you tell me whether this was fantasy or entrapment.

Well, what he might do—and this is in response to how he is going to go down there—and, again, remember it's your collective recollection of what

happened.  How are we going to set this up?  Now, this is Mr. Aust speaking.  Well, this is for Frank, but what he might do—speaking to Glawson—you know just drive out there and tell her he is looking for a piece of property and understands that she has some.

He is setting up the plan here.  Is that fantasy?  Is that a pipe dream?  In relation to how he is going to do it, the drug.  He says the one that causes the heart attack you mix it with the DMSO also.  This is Abner Aust speaking.  Does this sound like entrapment?  Well—and, again, out of Abner Aust [sic] mouth—well, he would have to get, you know, to make sure that it takes care of her.  You wouldn't want her to go around, come out of it, and tell what happened.

Is that entrapment?  These are the words of Abner Aust.  The judge will instruct you to use your common sense in assessing the evidence in this case.  If common sense tells you he is a grown man.  **He is prison [sic] for the same thing**.  He is going to have some punk inmate change his mind and put words in his head and make him do what he doesn't want to do.  Again, common sense.  He wanted it done.

. . . .

. . . they try to use the entrapment defense to further say that Glawson kept pushing him and pushing him to do this.  This is the last conversation that Glawson and Aust have.  And Glawson tells him this is done.

> And Inmate Aust:  Yeah.
> Ain't no changing your mind.
> Inmate Aust:  Yeah.
> I mean, this is it.

Now, think about it.  This is like Glawson trying to talk him out of it, not talk him into it.

> Inmate Aust:  Okay.
> It's going to happen this weekend you can back out now, but it's done after this weekend.  Ain't no going back; right?
> Okay.

Now, Inspector Lee testified that after that conversation . . . Inmate Glawson was removed and then that would be the reason why Inmate Aust didn't talk to Glawson after that.  Well, ladies and gentlemen, that was the last opportunity that Aust had to change his mind.  If he didn't want his wife killed he should have contacted law enforcement if that's going to be a defense.  If she turns up dead is it the government's fault?  He is responsible for having this happen.  **And, you know, he can pled [sic] ignorance or just talk, but wasn't he already in this position**

**before?  He is in prison**.  Don't you think that he knows better?  He trusted
Glawson that's why he did this.  Aust had no idea there wasn't a Frank and he had
no idea this wasn't going to happen.

. . . .

And, again, use your common sense in assessing this.  He not [sic] going to
provide detailed maps and then have — explain the reason for it on the stand, Poor
me.  He made me do it.  His last testimony, I didn't want to do it.  He made me do
it.  He is not a dumb person.  He trusted Glawson and if there was a Frank he did
nothing to prevent Brenda Aust from being murdered.

And then Mr. Glazer [defense counsel] said that he knew how to push his
buttons.  Again, this is a grown man who has been before [sic] there before.  He is
not going to have somebody push his buttons.  He just never dreamed he would be
caught again.

. . . .

And, you know, in this entrapment defense that the defense is now arguing,
the judge is also going to instruct you on what entrapment is not.  And he is going
to instruct you that it is not entrapment if the defendant had the predisposition to
commit the crime charged.

**Yeah, I'm  going to argue Williams rule.  Yeah, I'm going to argue that
he was in prison for the same thing.  He was hell bent on having it done**.  Again,
common sense.  And that he had a readiness or willingness to commit if the
opportunity present [sic] itself.  Well, it did present itself and he was willingness
[sic] to do it.

(*id.* at 189–96).

The prosecutor's comment "wasn't he already in this position before?  He is in prison" and

his comment that Petitioner was "in prison for the same thing" were based upon the evidence that

Petitioner previously solicited someone to burn down Brenda Aust's house with her in it and, as a

result, Petitioner was convicted of solicitation to commit arson.  The prosecutor was suggesting that

from this evidence the jury should draw the inference that Petitioner intended that Mr. Glawson kill

Brenda Aust, thus satisfying the intent element of the crime with which Petitioner was charged, and

that Petitioner was predisposed to soliciting someone to kill Brenda Aust, to rebut Petitioner's

defense that he was entrapped.  These were reasonable inferences that could be drawn from the

evidence.  Because there was some evidence supporting the inference that Petitioner intended that

Mr. Glawson kill Brenda Aust and that Petitioner was predisposed to soliciting someone to kill her,

the prosecutor's comments were not improper.  Furthermore, defense counsel remedied any

improper suggestion that Petitioner's previous conviction was for solicitation to commit murder instead of arson by emphasizing this point during cross-examination of Deputy Sumner and closing argument.  Therefore, Petitioner has failed to show that defense counsel performed unreasonably by failing to object to the prosecutor's comments and request a curative instruction, or move for a mistrial, or both.

Additionally, Petitioner has failed to show he was prejudiced by counsel's alleged error.  The evidence against Petitioner included testimony of David Lee, an inspector with the Department of Corrections employed at Wakulla Correctional Institution, that he received information which led him to interview James Glawson, an inmate at the institution, and during the interview, Inmate Glawson told him that he had been speaking to Petitioner, and Petitioner approached him with a plan to kill his (Petitioner's) ex-wife (Doc. 7, Ex. B at 12–14).  Inspector Lee testified that he instructed Inmate Glawson to continue his contacts with Petitioner, and if Petitioner continued to talk about killing his ex-wife, Lee told Glawson to inform him (Lee) (*id.* at 14–15).  Inspector Lee further testified that a short time later, he was notified that Inmate Glawson wanted to talk with him, and when the two of them met, Glawson gave him a map of directions to Ms. Aust's home and a floor plan of the home that Petitioner had drawn and given to him (*id.* at 16).  Based upon this information, Inspector Lee arranged for Inmate Glawson to be equipped with a recording device to record two conversations with Petitioner (*id.* at 16–17).  Tape recordings of two conversations between Petitioner and Glawson, which occurred on March 15 and March 27, were admitted into evidence and published to the jury (*id.* at 21–81).  During those conversations, Petitioner and Inmate Glawson discussed the following:  (1) Petitioner wanted his ex-wife, Brenda Aust, killed, (2) an acquaintance of Glawson's named "Frank" would do the actual killing, (3) the killing would occur either while Petitioner was incarcerated or shortly after he was released and had traveled out of the country, (4) the method of killing would be use of a chemical named "DMSO" and LSD, which would cause a drug overdoes or heart attack or both, (5) Petitioner was angry with Brenda Aust because she stole money from him and bought property with it, and Petitioner would obtain the property upon her death, and (6) Petitioner would pay "Frank" a total of $6,000.00 for the killing (Doc. 7, Ex. B at 30–77).  Inspector Lee further testified that he interviewed Petitioner as part of his investigation and, after advising Petitioner of his rights, Petitioner admitted that he drafted the

maps (*id.* at 55).  The map of directions to Brenda Aust's home and the floor plan of her home were admitted into evidence (*id.* at 55–56).  The State also called Brenda Aust as a witness, who confirmed that the diagrams depicted a map to her home and the floor plan of her house (*id.* at 94–95).  The State also presented testimony from a pharmacist, who testified that "DMSO" was dimethyl sulfoxide, which could be used to enhance the absorption of other drugs through the skin (*id.* at 101–03).

Petitioner testified in his own defense.  He admitted that he and Glawson were the participants in the recorded conversations and that he drew the diagrams relating to Ms. Aust's home (*id.* at 112–14, 118).  Petitioner denied that he ever asked Glawson to murder Brenda Aust (*see* Doc. 7, Ex. B at 112–14).  Petitioner testified that Glawson offered to have Ms. Aust killed, but he (Petitioner) told him he did not want any part of it (*id.* at 115).  Petitioner testified that Glawson kept pushing him to do it, and even though he finally agreed, he did not intend for anything to happen (*id.* at 115–20).

Viewing the prosecutor's comments in the context of the entire trial proceeding, the undersigned concludes that Petitioner failed to establish a reasonable probability that the outcome of the trial would have been different if counsel had objected to the prosecutor's comments and requested a curative instruction, or moved for a mistrial, or both.  Accordingly, he is not entitled to habeas relief on this claim.

 C. <u>Ground three:  Ineffective assistance violating the defendant's 5th, 6th, and 14th Constitutional rights by failing to file a motion in limine/object to prejudicial nature of similar fact evidence.</u>

Petitioner contends counsel should have objected to admission of the evidence of his prior conviction on the ground that the sole purpose for introducing it was to show Petitioner's bad character or propensity to commit the crime (Doc. 1 at 8; Doc. 3 at 9–12).  Petitioner additionally contends that even if the evidence was relevant, counsel should have argued that the prejudicial effect outweighed its probative value (*id.*).

 1. Clearly Established Supreme Court Law

The Supreme Court standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (*see* Doc. 7, Ex. K at 8–9). As with Petitioner's previous two claims, the state court did not adjudicate the merits of this claim. Therefore, the undersigned will review the claim de novo.

Section 90.403 of the Florida Evidence Code provides that relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. Fla. Stat. § 90.403. As the Florida Supreme Court stated in Williamson v. State:

> Almost all evidence introduced during a criminal prosecution is prejudicial to a defendant. Amoros v. State, 531 So. 2d 1256, 1258 (Fla. 1988). In reviewing testimony about a collateral crime that is admitted over an objection based upon section 90.403, [Florida Statutes (1999),] a trial judge must balance the import of the evidence with respect to the case of the party offering it against the danger of unfair prejudice. Only when the unfair prejudice substantially outweighs the probative value of the evidence should it be excluded. . . . The testimony [at issue] was integral to the State's theory of why its key witness acted as he did both during and after the criminal episode. Had the trial judge precluded [this] testimony, the jury would have been left with a materially incomplete account of the criminal episode. Thus, we conclude that the trial judge did not err in admitting this testimony.

681 So. 2d at 696 (citations omitted).

The undersigned cannot say that evidence of Petitioner's prior conviction was so prejudicial that its relevance was outweighed. Evidence that Petitioner had previously solicited someone to burn down Brenda Aust's home and was convicted of solicitation to commit arson was relevant in establishing a pattern of similarities among the crimes, that is Petitioner's hiring a third party to commit violence against his ex-wife. This, in turn, was relevant to the State's theory of intent and to rebut Petitioner's claim that he was entrapped. Relevance clearly outweighed prejudice here; and the similar crimes evidence was fair within the requirements of the law, especially in light of the fact that the trial judge twice instructed the jury regarding the limited purpose for which they could consider the evidence. Therefore, Petitioner has failed to demonstrate that defense counsel's failure to seek exclusion of the evidence on the ground that its prejudicial effect outweighed its probative value was unreasonable. Furthermore, he has failed to establish a reasonable probability that the

trial court would have excluded the evidence if counsel had raised this objection.  Accordingly, Petitioner is not entitled to relief on this claim.

      D.    Ground four:  Ineffective assistance violating defendant's 5th, 6th, and 14th Amendment Constitutional rights by failing to object to State's making collateral crime evidence a feature of the trial.

Petitioner essentially repeats the arguments he made in his previous grounds for relief by faulting counsel for failing to object to admission of evidence of his prior conviction for solicitation to commit arson and failing to object to the prosecutor's comments on this evidence.  Petitioner contends defense counsel permitted the State to make the prior conviction a feature of the trial and caused the prejudicial effect of the evidence to significantly outweigh any probative value (Doc. 1 at 9; Doc. 3 at 11–12).

Petitioner's arguments have been considered and rejected in the previous discussion of Grounds One, Two and Three, and the undersigned need not repeat those arguments here.  For the reasons discussed *supra*, Petitioner had failed to show that his counsel performed ineffectively by failing to object to admission of evidence concerning Petitioner's prior conviction and failing to object to the prosecutor's comments regarding this evidence.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Four.

      E.    Ground Five:  Ineffective assistance violation defendant's 5th, 6th, and 14th Amendment constitutional rights by failing to bring allegations of prosecutorial misconduct to trial court's attention.

Petitioner contends defense counsel should have objected to admission of the two recorded conversations between Petitioner and Inmate Glawson on the ground that Glawson did not testify that he agreed to having these conversations recorded (Doc. 1 at 11).  Petitioner acknowledges that at the beginning of the taped conversation on March 27, 2002, there is a statement that Glawson agreed to wear a wire, but there is no such statement on the tape of the March 15, 2002 conversation, therefore, that recording was inadmissible (*id.*).

Petitioner additionally contends defense counsel performed deficiently by failing to inform the trial judge of a deal between Inmate Glawson and the State whereby the State promised Glawson that in exchange for his wearing a wire and agreeing not to testify at Petitioner's trial, the State would (1) effect Glawson's speedier release by restoring gain time he had lost, (2) effect Glawson's

release on his release date despite the fact that there was an outstanding warrant for his arrest, and (3) decline to prosecute the charge that was the subject of the outstanding warrant (Doc. 3 at 13). Petitioner also alleges the prosecutor intentionally caused Glawson to be unavailable as a trial witness by releasing him despite the arrest warrant and failing to make diligent efforts to locate him so they could rely on the tape recordings and avoid subjecting Glawson to cross-examination, during which the alleged deal would be exposed (*id.* at 13–15). Petitioner's states these allegations could be proven if this court required Mr. Glawson to testify at an evidentiary hearing in this matter (*id.* at 15–16).

1. Clearly Established Supreme Court Law

The Supreme Court standard for evaluating claims of ineffective assistance of counsel is set forth *supra*.

2. Federal Review of State Court Decision

Petitioner raised this claim as Ground Five in his Rule 3.850 motion (*see* Doc. 7, Ex. K at 14–19). The state court disposed of the claim in the same manner as Grounds One through Four. Because the state court did not adjudicate the merits of Petitioner's ineffective assistance of counsel claim, the undersigned will review the claim de novo.

Initially, Petitioner has failed to show that defense counsel had a reasonable basis for objecting to admission of the tape recordings on the ground that there was no evidence that Mr. Glawson had consented to the recordings. Florida law authorizes a law enforcement officer to intercept a communication electronically when one of the parties to the communication has given prior consent. Fla. Stat. § 934.03(2)(c). In State v. Welker, the Florida Supreme Court held that proof of consent, for purposes of obtaining evidence of a criminal act through electronic intercept, is governed by traditional rules of evidence, and under those rules, a deputy's testimony that an informant consented to an electronic intercept is sufficient to permit introduction of a tape recording of the intercepted conversation. 536 So. 2d 1017, 1020 (Fla. 1988). In the instant case, Inspector Lee testified regarding the procedure he followed in equipping Inmate Glawson with the recording device (Doc. 7, Ex. B at 16–17). He and another inspector met with Inmate Glawson on the date of the first recording and informed him that they would place a recording device on his person, he needed to go straight from their meeting onto the "rec yard," have a conversation with Petitioner,

and then immediately return the meeting place (*id.*).  Lee testified that Inmate Glawson was stripped and searched, the recording device was taped to his ankle, the microphone was taped to his chest, he redressed, the recorder was started, and Glawson was sent out to the "rec yard" (*id.*).  Inspector Lee also testified that during this process Glawson signed a release indicating that he knew he was placing himself in harm's way by wearing the recording device (*id.* at 17).  Additionally, at the beginning of second recording, Inmate Glawson stated that he signed a consent form stating that he consented to wear the listening device and to record a conversation with Petitioner (*id.* at 61–62).  Inspector Lee testified that he utilized the same procedure in equipping Glawson with the wire on both occasions (*id.* at 58–59).  Finally, defense counsel elicited testimony from Inspector Lee that during the times Inmate Glawson was wearing the wire, he was an informant, "working for" prison officials, cooperating with the Inspector's Office, and acting as a law enforcement agent (*id.* at 85–86).  Inmate Glawson's statement that he consented to wear the listening device, together with Inspector Lee's testimony, was sufficient evidence of Glawson's consent to permit introduction of both recordings into evidence.  Therefore, Petitioner has failed to demonstrate that counsel's failure to object to admission of the recordings on the basis of lack of consent was unreasonable.

Petitioner's additional claim that defense counsel performed deficiently by failing to inform the trial judge of a deal between Inmate Glawson and the State, and counsel's failure to advise the court that the prosecutor intentionally caused Glawson to be unavailable as a trial witness fails for lack of factual support.  Petitioner has proffered no evidence to support his claim that Glawson's unavailability as a trial witness was the result of an agreement between Glawson and the State, or that Glawson received any benefit from acting as an informant.  Furthermore, Inspector Lee testified that he was present when James Glawson was served with a subpoena for Petitioner's trial, he (Lee) had personal knowledge that law enforcement was looking for Glawson, and he knew that a "body writ of execution for a material witness" had been issued for Glawson (*id.* at 86–87).  Petitioner's speculative assertions of an agreement between Glawson and the State and the State's intentionally causing Glawson to be unavailable for trial are simply insufficient to satisfy Petitioner's burden of demonstrating that defense counsel performed deficiently by failing to bring these matters to the trial court's attention.  Therefore, Petitioner is not entitled to federal habeas relief as to Ground Five.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 2nd day of April 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**